UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Debra A. Gurule,

    Plaintiff,

    v.                                     Civil Action No.2:11-CV-96

Michael J. Astrue,
Commissioner of Social Security,

    Defendant.

## OPINION AND ORDER
(Docs. 13, 18)

Plaintiff Debra Gurule brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting review and remand of the decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits. Pending before the Court are Gurule's motion to reverse the Commissioner's decision (Doc. 13), and the Commissioner's motion to affirm the same (Doc. 18). For the reasons stated below, the Court GRANTS Gurule's motion, in part; DENIES the Commissioner's motion; and REMANDS for further proceedings and a new decision.

## Background

Gurule was fifty years old on her alleged onset date of October 19, 2002. She received an associate's degree in liberal arts in 1972, and was working on a degree in drug and alcohol rehabilitation in 1993. She worked as a waitress for many years until approximately 1988. Thereafter, she had two failed attempts to work as a housekeeper, stopping each job due to pain. Between approximately 2005 and 2008, she first

volunteered and then worked part-time as an outreach specialist at a center for individuals abusing drugs and alcohol.

Gurule is divorced and has two adult children and one grandchild.  She apparently was receiving disability benefits from July 1989 until May 2001, at which time benefits were terminated due to medical improvement. (Doc. 13 at 2.)  She has been homeless for several periods since 2001, and received a daily meal from Meals on Wheels from 2002 through 2005.  In 2001, she lost custody of her teenage son.  For some period of time between 2002 and 2008, her mother supported her, and she lived with her mother for approximately one-and-one-half years, until her mother entered a nursing home in 2008. (AR 42.)  In or around the fall of 2008, Gurule's daughter was incarcerated in Georgia and the State took custody of Gurule's granddaughter.  (AR 609, 611.)  Between 2002 and 2008, Gurule had periods of alcohol abuse and periods of sobriety.  (AR 44.)  She claims she has been sober since 2008.  (AR 43.)

In January 2009, Gurule filed an application for disability insurance benefits, alleging that she has been unable to work since October 19, 2002 due to myofascial pain syndrome, back pain, sciatic pain, osteoarthritis, alcoholism, panic attacks, anxiety, and sleep problems.  (AR 177-78, 204, 209.)  The application was denied initially and on reconsideration.  On November 10, 2010, Administrative Law Judge ("ALJ") Edward Hoban conducted a hearing on the application.  (AR 29-65.)  Gurule appeared and testified, and was represented by counsel.  Vocational expert ("VE") James Parker also testified at the hearing.  (AR 60-65.)  On December 23, 2010, the ALJ issued a decision finding that Gurule was not disabled under the Social Security Act from her alleged onset

2

date of October 19, 2002 through her date last insured of September 30, 2005. (AR 11-21.) A few months later, the Decision Review Board affirmed the ALJ's decision, rendering it the final decision of the Commissioner. (AR 1-5.) Having exhausted her administrative remedies, Gurule filed the Complaint in this action on April 12, 2011. (Doc. 3.)

## ALJ Decision

The Commissioner uses a five-step sequential process to evaluate disability claims. *See Butts v. Barnhart*, 388 F.3d 377, 380-81 (2d Cir. 2004). The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether the claimant's impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). 20 C.F.R. §§ 404.1520(d), 416.920(d). The claimant is presumptively disabled if the impairment meets or equals a listed impairment. *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the ALJ is required to determine the claimant's residual functional capacity ("RFC"), meaning "the most [the claimant] can still do despite [his or her mental and physical] limitations," based on all the relevant medical and other evidence in the record. 20 C.F.R. §§ 404.1520(e), 404.1545, 416.920(e), 416.945. The fourth step requires the ALJ to consider whether the claimant's

RFC precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  Finally, at the fifth step, the ALJ determines whether the claimant can do "any other work."  20 C.F.R. §§ 404.1520(g), 416.920(g).  The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's [RFC]").

When faced with a claimant who has a drug or alcohol addiction, such as Gurule here, the ALJ is required to consider an extra step in the five-step sequential evaluation.  *Salazar v. Barnhart*, 468 F.3d 615, 622 (10th Cir. 2006).  The Social Security Act states: "An individual shall not be considered to be disabled . . . if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled."  42 U.S.C. § 423(d)(2)(C); *see Porter v. Chater*, 982 F. Supp. 918, 921-22 (W.D.N.Y. 1997).  Accordingly, if the ALJ finds that the claimant is disabled, and there is medical evidence of the claimant's drug addiction or alcoholism, the ALJ "must determine whether [that] drug addiction or alcoholism is a contributing factor material to the determination of disability."  20 C.F.R. § 404.1535(a).

Employing this sequential analysis, ALJ Hoban first determined that Gurule had not engaged in substantial gainful activity since her alleged disability onset date of October 19, 2002.  (AR 13.)  At step two, the ALJ found that Gurule had the severe

impairments of myofascial pain syndrome, depression with anxiety, and a history of chronic alcohol abuse through 2008.  (AR 14.)  Conversely, the ALJ found that Gurule's "mild disc degeneration" caused no more than mild limitation in her ability to perform basic work activities.  (*Id.*)  At step three, the ALJ determined that Gurule's impairments, including her substance use disorder, met sections 12.04 and 12.09 of the Listings.  (AR 14-15.)  The ALJ further found that, if Gurule stopped the substance use, she would continue to have a severe impairment or combination of impairments, but none of these impairments or combination of impairments would meet or medically equal a listed impairment.  (AR 15-16.)

   Next, the ALJ determined that, if Gurule stopped the substance use, she would have the RFC to perform "light work," as defined in 20 C.F.R. § 404.1567(b), except that she could only occasionally stoop, crouch, and perform other postural activities; she could perform tasks involving only one-to-three steps; and she could tolerate only occasional social interaction with the public, coworkers, and supervisors.  (AR 17.)  Given this RFC, the ALJ found that Gurule was unable to perform her past relevant work as a server.  (AR 20.)  Relying on testimony from the VE, however, the ALJ determined that, if Gurule stopped the substance use, there would be a significant number of jobs in the national economy that Gurule could perform, including office cleaner, price marker, and inserter.  (AR 20-21.)  The ALJ concluded that, because Gurule would not be disabled if she stopped the substance use, her substance use disorder was a contributing factor material to the determination of disability; and thus she had not been disabled within the meaning of the Social Security Act from her alleged onset date of

5

October 19, 2002 through the date last insured of September 30, 2005.  (AR 21.)

## Standard of Review

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A person will be found disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

In reviewing a Commissioner's disability decision, the court limits its inquiry to a "review [of] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard."  *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g).  A court's factual review of the Commissioner's decision is limited to determining whether "substantial evidence" exists in the record to support such decision.  42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *see Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the fact[-]finder.").  "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Poupore*, 566 F.3d at 305. In its deliberations, the court should consider that the Social Security Act is "a remedial statute to be broadly construed and liberally applied." *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

## Analysis

I.   **Work Existing in "Significant Numbers"**

Gurule argues that the ALJ erred in concluding that work existed in the national economy that she could perform. Specifically, Gurule asserts that the 370 regional jobs and 715,000 national jobs that the VE testified she could perform do not constitute "significant numbers" of jobs, as required by the regulations. In response, the Commissioner contends that the numbers of jobs provided by the VE and relied upon by the ALJ constitute "significant numbers."

As outlined above, the fifth step of the ALJ's sequential analysis requires the ALJ to determine whether the claimant could do "any other work" during the alleged disability period. 20 C.F.R. § 404.1520(g). In reaching this decision, the ALJ must consider whether work exists "in the national economy" that the claimant could do. 42 U.S.C. § 423(d)(2)(A). The regulations define such work as, "work which exists in significant numbers either in the region where [the claimant] lives or in several regions of the country." *Id.* The regulations further provide that the availability of jobs is determined "regardless of whether such work exists in the immediate area in which [the claimant] lives." *Id.* Thus, an ALJ meets the requirement of showing the existence of a significant number of jobs if that number of jobs is available either regionally or

nationally. The ALJ here found that, based on the VE's testimony, the jobs of office cleaner, price marker, and inserter, were representative of the type Gurule could perform, and there were 370 of these jobs regionally and 715,000 nationally. (AR 21; *see* AR 61-62.)

Courts have refused to draw a bright line standard for the minimum number of jobs required to show that work exists in significant numbers, and have generally held that what constitutes a "significant" number of jobs is "a relatively low threshold number." *Barbato v. Astrue*, No. 09-CV-6530T, 2010 WL 2710521, at *7 (W.D.N.Y. July 7, 2010) (150,000 national jobs a significant number); *see Green v. Apfel*, 168 F.3d 499, 1999 WL 97358, at *3 (9th Cir. 1999) (350-400 jobs in immediate area a significant number); *Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997) (200 jobs in State of Iowa and 10,000 nationally significant numbers); *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988) (1,350 local positions a significant number); *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987) (174 positions within the local economy and 80,000 nationwide significant numbers); *Craigie v. Bowen*, 835 F.2d 56, 58 (3d Cir. 1987) (200 regional jobs a significant number); *Dumas v. Schweiker*, 712 F.2d 1545, 1549, 1553-54 (2d. Cir. 1983) (allowing to stand ALJ's conclusion, based on VE testimony, that 150 jobs regionally and 112,000 jobs nationally were significant numbers); *Bull v. Comm'r of Soc. Sec.*, No. 1:05-CV-1232 (LEK/RFT), 2009 WL 799966, at *6 (N.D.N.Y. Mar. 25, 2009) (100,000 national jobs and 125 local jobs significant numbers); *Fox v. Comm'r of Soc. Sec.*, No. 6:02-CV-1160 (FJS/RFT), 2009 WL 367628, at *20 (N.D.N.Y. Feb. 13, 2009) (citing cases, and holding that 200 regional jobs and 132,980 national jobs constituted

significant numbers of jobs, even if diminished by a small percentage in the VE's estimation); *Barney v. Astrue*, No. 07-CV-49S, 2008 WL 4384456, at *4 (W.D.N.Y. Sept. 22, 2008) (465 regional positions and 174,000 national positions significant numbers); *Dixie v. Comm'r of Soc. Sec.*, 5:05-CV-345, 2006 WL 5811897, at *16-17 (N.D.N.Y. June 30, 2006) (130 regional jobs and 84,000 national jobs significant numbers), *rejected on other grounds in Dixie v. Comm'r of Soc. Sec.*, No. 5:05-CV-345 NAM/GJD, 2008 WL 2433705, at *11 (N.D.N.Y. June 12, 2008); *but see Robinson v. Astrue*, No. 08-CV-4747 (RJD), 2009 WL 4722256, at *2 (E.D.N.Y. Dec. 9, 2009) ("while the Social Security Act does not specify any precise formula for determining whether a particular number of jobs is sufficiently 'significant,' a number of courts have suggested that [200 local jobs and 3,000 national jobs] would not qualify as sufficiently significant") (citing cases).

Moreover, as stated above, the number of regional jobs is not the defining factor, as the ALJ may satisfy his burden of demonstrating that work exists in the national economy if he demonstrates that significant numbers exist *either* in the region where the claimant lives or in several regions of the country. Applied here, the Court need not determine whether 370 regional jobs is a "significant number" because the presence of 715,000 national jobs clearly is. *See Williams v. Astrue*, No. 11-CV-023S, 2012 WL 1113393, at *3 (W.D.N.Y. Mar. 30, 2012) (declining to determine whether 217 local jobs is sufficiently "significant" because "the presence of 58,000 jobs nationally satisfies the Commissioner's burden"). In any event, the Court finds, based on a review of the case law in this and other circuits, that both 715,000 national jobs and 370 regional jobs

9

constitute "significant" numbers of jobs. Therefore, the ALJ's reliance on the VE's testimony on this issue is not grounds for remand.

## II.    ALJ's Analysis of the 2002 and 2009 Opinions of Gurule's Treating Physician and Treating Chiropractor

Next, Gurule argues that the ALJ erred in failing to evaluate (a) the 2002 medical opinions of Gurule's treating physician and treating chiropractor; and (b) the 2009 medical opinion of Gurule's treating chiropractor. (Doc. 13 at 16-17, Doc. 21 at 6.) The Commissioner argues that this evidence is irrelevant to the period under review, and thus the ALJ was not required to consider it. (Doc. 18 at 14-17.)

In a May 17, 2002 "Medical Source Statement of Ability to do Work-Related Activities (Physical)," Gurule's treating primary care physician, Dr. Curchin, opined that Gurule could only occasionally lift less than ten pounds, could walk for less than two hours in an eight-hour workday, needed to periodically alternate between sitting and standing to relieve pain and discomfort, had limited mobility in her upper and lower extremities, and was limited in her ability to reach in all directions. (AR 1104-06.) The ALJ did not mention this opinion in his decision. In fact, the ALJ's only statement regarding the opinions of any treating physicians was that "none of [Gurule's] physicians offered opinions in support of a finding of disability during the relevant period at issue." (AR 19.)

Although Dr. Curchin did not refer to any medical or clinical findings in support of his May 2002 opinion, and although he did not surmise therein that his assessed limitations would persist into the alleged disability period which began approximately

10

five months after the opinion was prepared; the ALJ should have explained why he afforded minimal weight to the opinion. The Second Circuit has long held that ALJs are required to explain the weight given to the opinions of treating physicians, and that failure to provide "good reasons" for not crediting such opinions is a ground for remand. *See* 20 C.F.R. § 404.1527(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."); *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998) ("Commissioner's failure to provide 'good reasons' for apparently affording no weight to the opinion of plaintiff's treating physician constituted legal error" and was grounds for remand). In *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999), the Second Circuit applied this rule to treating physician opinions which were made outside the alleged disability period, given that those opinions were more favorable to the claimant than those relied on in the ALJ's decision. The court explained:

> In its decision denying benefits, the Appeals Council stated correctly that Dr. Clark had made contradictory findings in different examinations conducted on February 16, 1995 and March 9, 1995. The March 9 findings were more favorable to Snell, but the Appeals Council chose to credit the February 16 report. By way of explaining that decision, the Appeals Council noted that the February 16 examination was the more detailed of the two.
>
> The Council made no reference, however, to Clark's third examination, which was conducted on August 3, 1995. The findings on that date were even more favorable to Snell than were the March 9 findings. The Appeals Council's explanation of why it trusted the February 16 report rather than that of March 9 was adequate as far as it went, but the Council did not explain why the findings of February 16 should be preferred to those of August 3. *It may be that there are reasons for discrediting the August report. But it is equally possible that the Council's failure to give weight to those findings was inadvertent. In any event, on the record before us, it is*

11

> *clear that the Appeals Council has not given a reason for discrediting the most pro-claimant findings of Dr. Clark, who was a treating physician.*
>
> On this appeal, the Commissioner argues that there was no need to consider Clark's findings at all. Clark's exams were conducted more than a year after Snell's coverage lapsed, and Clark never related her findings back to the period of coverage. *That might, perhaps, have been an acceptable reason for a decision by the Commissioner not to give much weight to Clark's findings. But the Appeals Council did not in fact offer that reason. And it is more than doubtful that such a rationale could have underlain the Appeals Council's choice to ignore the August 3 report, because that body's statement about the relative merits of the February 16 and March 9 examinations-which were likewise conducted after coverage lapsed-indicates that Clark's examinations were not simply dismissed as untimely.*
>
> A reviewing court "may not accept appellate counsel's post hoc rationalizations for agency action." We therefore conclude that Snell is entitled to an express recognition from the Appeals Council of the existence of Dr. Clark's favorable August report and, if the Council does not credit the findings of that report, to an explanation of why it does not.

*Id.* (citation omitted) (emphases added).

Similarly, in this case, it may have been acceptable for the ALJ to have given little weight to Dr. Curchin's May 2002 opinion on the grounds that it fell outside the alleged disability period. But the ALJ did not offer this reason, and it would have been somewhat inconsistent for the ALJ to have done so, given that the ALJ gave great weight to the opinions of state agency consultants which likewise fell outside the alleged disability period. (*See* AR 19; Doc. 21 at 6.) Also noteworthy, like in *Snell*, the May 2002 opinion of Dr. Curchin is significantly more favorable to Gurule's claim than the consultant opinions are. Thus, the ALJ was obligated to explain his rejection of Dr. Curchin's opinion, rather than failing to mention it at all, leaving the Court and Gurule to wonder if such failure was inadvertent or intended. For these reasons, the Court finds

that remand is required so that the ALJ may consider Dr. Curchin's May 2002 opinion and give good reasons for the weight afforded thereto.

      The ALJ also failed to mention in his decision the March 31, 2002 "Medical Source Statement" of Gurule's treating chiropractor, Dr. James Lynch. Therein, Dr. Lynch apparently opined that Gurule could stand and/or walk for at least two hours in an eight-hour workday, could not sit for prolonged periods, needed to alternate between sitting and standing, and had a limited ability to use her lower extremities for pushing and pulling. (AR 74, 291.) The parties discuss this opinion in some detail in their briefs, and both Gurule's counsel and the ALJ referred to it at the administrative hearing (AR 33, 48); but it is not a part of the record. On remand, the opinion should be added to the record and considered by the ALJ, in conjunction with the May 2002 opinion of Dr. Curchin. Although, like Dr. Curchin's May 2002 opinion, there is no indication that Dr. Lynch's March 2002 opinion was prospective to the alleged disability period, which began approximately seven months after it was prepared, the ALJ should have at least considered it, given its consistency with Dr. Curchin's opinion from around the same period. Dr. Lynch's status as a chiropractor and not an "acceptable medical source" means that he could not provide a "medical opinion," and thus the ALJ was not required to afford controlling weight to his opinions. *Diaz v. Shalala*, 59 F.3d 307, 313-14 (2d Cir. 1995) (citing 20 C.F.R. §§ 404.1513, 404.1527(a)(2)). Nonetheless, chiropractors are considered "other medical sources," whose opinions the Commissioner has deemed "important" and deserving of consideration on issues such as impairment severity and functional effects, particularly when they are consistent with the medical opinions of

treating physicians such as Dr. Curchin here. SSR 06-03p, 2006 WL 2329939, at *2-4 (Aug. 9, 2006); 20 C.F.R. § 404.1527(d)(1).

On the other hand, the ALJ was not required to consider Dr. Lynch's February 18, 2009 letter opinion which states that Gurule was "not employable at this time." (AR 723.) A retrospective opinion may be used to support the existence of a disability only when that opinion clearly refers to the disability period and not when the opinion "simply express[es] an opinion as to the claimant's current status." *Vitale v. Apfel*, 49 F. Supp. 2d 137, 142 (E.D.N.Y. 1999) (citing *Jones v. Sullivan*, 949 F.2d 57, 59-60 (2d Cir. 1991)). Dr. Lynch's February 2009 opinion not only fails to reference the relevant period (October 2002 through September 2005), but goes a step further and uses particular wording ("at this time") to indicate that it was intended to apply exclusively to Gurule's condition around the date of its preparation, over three years after the relevant period ended. (AR 723.) Furthermore, the opinion uses the present tense, except for a reference to "past problems with alcohol abuse," which issue Dr. Lynch stated he was "not . . . qualified to properly assess." (*Id.*) Accordingly, the ALJ was not required to consider Dr. Lynch's February 2009 opinion, and even if he was, any error would have been harmless given that the opinion was not favorable to Gurule. *See Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) (remand unnecessary where medical opinion is not "significantly more favorable to the claimant than the evidence considered"); *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) (applying harmless error standard in social security context).

## III. ALJ's Consideration of Gurule's Award of Disability Benefits Prior and Subsequent to the Relevant Period

Finally, Gurule argues that the ALJ erred in failing to discuss Gurule's award of disability benefits from 1989 to 2001 and from 2009 until the date of the ALJ's December 2010 decision. (Doc. 13 at 17.) This Court is aware of no law, and Gurule cites to none, requiring an ALJ to consider a claimant's award of disability benefits prior or subsequent to the period under review in a pending disability application. Moreover, Gurule fails to explain how the ALJ's omission prejudiced her claim; she merely states that the ALJ's failure to reference the 2009 award of disability benefits "is significant because [the ALJ] found that her pain became more manageable after she achieved sobriety in 2008." (*Id.*) But the Court is unable to consider the 2009 award, given that it is not contained in the record and the basis for the award is unclear from the record. Also significant, the award was granted over four years after Gurule's insured status expired in September 2005. Accordingly, the Court finds that the ALJ did not err in failing to consider Gurule's award of disability benefits for periods prior and subsequent to the period under review.

## **Conclusion**

For these reasons, the Court GRANTS Gurule's motion (Doc. 13), in part; DENIES the Commissioner's motion (Doc. 18); and REMANDS for further proceedings and a new decision in accordance with this ruling.

Dated at Burlington, in the District of Vermont, this 8th day of May, 2012.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge